NOT FOR PUBLICATION                    [Dkt. Ent. 49]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| Keith L. Jones,<br><br>    Plaintiff,<br><br>v.<br><br>McCormick & Schmick's Seafood<br>Restaurants, Inc.,<br><br>    Defendant. | Civil No. 1:12-cv-04503<br>(RMB/AMD)<br><br>**OPINION** |

Appearances

Robert H. Bembry, III
100 S. Broad Street, Suite 1530
Philadelphia, PA 19110
     Attorney for Plaintiff

Kathy S. Marks
Yankwitt & McGuire LLP
140 Grand Street, Suite 501
White Plains, NY 10601
     Attorney for Defendant

**Bumb**, UNITED STATES DISTRICT JUDGE:

     Plaintiff Keith Jones ("Plaintiff") asserts claims for

employment discrimination and retaliation pursuant to 42 U.S.C.

§ 1981, and hostile work environment under the New Jersey Law

Against Discrimination ("NJLAD") against Defendant McCormick &

Schmick's Seafood Restaurants, Inc. ("Defendant" or

"M&S"). Although Plaintiff acknowledges that he voluntarily

resigned, he later attempted to rescind that resignation and

1

alleges that, because of his race and his complaint of racial discrimination, M&S refused to rescind his resignation. M&S moves for summary judgment on all claims. For the reasons that follow, Defendant's motion for summary judgment will be GRANTED.

## I. BACKGROUND

In December 2009, Plaintiff, an African American male, accepted the position of General Manager of the M&S restaurant at Harrah's Hotel in Atlantic City (the "Restaurant") and began working in January 2010. (Defendant's Statement of Undisputed Material Facts ("DSUMF"), Dkt. Ent. 51, ¶¶ 1-2; Plaintiff's Statement of Undisputed Material Facts ("PSUMF"), Dkt. Ent. 58, ¶¶ 1-2.) On September 13, 2011, Plaintiff became involved in a heated argument with Executive Chef Brian Iacone over proposed employee discipline. (DSUMF ¶ 3; PSUMF ¶ 3.) On September 19, Plaintiff was issued a final warning, citing his unprofessionalism during the incident with Iacone as well as Plaintiff's violation of human resources policy by privately meeting with three employees regarding their employment status and demoting at least one employee without guidance from Regional Management or HR. (Ex. A to Compl.)[1] Both parties agree

_____

[1] Iacone was also issued a written disciplinary warning for the incident. (Ex. L to the Declaration of Kathy S. Marks ("Marks Decl."), Dkt. Ent. 53.) The language in both warnings regarding this incident is nearly identical. (Compare Ex. A to Compl. with Ex. L to Marks Decl.)

that a final warning does not mean that the employee will be terminated in the event of a subsequent disciplinary incident. (DSUMF ¶ 10; PSUMF ¶ 10.)

On October 15, 2011, Plaintiff was involved in a physical altercation with Restaurant server Anthony Maconi, during which Plaintiff claims Maconi assaulted him. (DSUMF ¶ 6; PSUMF ¶ 6.) Both parties agree that because of this incident, M&S terminated Maconi's employment upon Plaintiff's recommendation. (DSUMF ¶ 7; PSUMF ¶ 7.) Afterward, Plaintiff received coaching and training from Samuel Hunter, M&S Regional Human Resources Manager, on how to better handle similar incidents in the future. (DSUMF ¶ 8; PSUMF ¶ 8.) However, Plaintiff does not dispute that Hunter never stated or implied Plaintiff's position was in jeopardy because of this incident. (DSUMF ¶ 9; PSUMF ¶ 9.)

Regardless, a few days later, on October 18, Plaintiff submitted his resignation to M&S Human Resources via email. (DSUMF ¶ 11; PSUMF ¶ 11.) Plaintiff related:

> I would like to thank everyone in key positions associated with McCormick and Schmick's for allowing me the opportunity to be a trusted operator with this highly respected company. Your thoughtfulness and kindness has been very well received and I am eternally grateful for the awesome responsibilities that have been bestowed upon me. I have become a smarter operator, gained enormous knowledge and established highly respected relationships with guests and co-workers alike.
>
> Please be advised that I am giving my open-ended resignation until the upper-management team can find a

3

suitable replacement. It is with apprehension that I come to this decision.

I wish nothing but the best for this company and hope that it continues to be an industry leader. I have great faith in the leadership team of this company and I know that they will stay on the cutting edge and continue to make important decisions whereby achieving growth and financial solvency.

Your kindness and hospitality has been unsurpassed.

(Ex. C to Compl.; DSUMF ¶ 12; PSUMF ¶ 12.) Plaintiff admits that he made the decision to resign "all on [his] own" with no pressure from M&S. (DSUMF ¶ 13; PSUMF ¶ 13; Ex. A to Marks Decl. ("Pl.'s Dep.") at 236:24–237:5.)

Ten days later, however, on October 28, 2011, Plaintiff sent another email to M&S asking to rescind his resignation. (DSUMF ¶ 19; Ex. D to Compl.). The email also stated that Plaintiff wished "to make a formal complaint" of racial discrimination, and cited disparate disciplinary treatment. (Ex. D to Compl.) Specifically, the email stated:

Please be advised that I would like to rescind my resignation that was submitted on October 18, 2011 as of today's date. My reason for rescinding my resignation is based on the fact that I refuse to leave a position that I have worked very hard to attain by demonstrating strong leadership qualities and exercising sound judgment as it relates to my responsibilities as a manager/general manager for this company.

I would like to make a formal complaint that I feel I have been racially discriminated against based on the treatment that I received from a disciplinary action standpoint compared to others. I bare [sic] witness to events that have surfaced over the years that leads me to draw this conclusion.

4

It is very difficult for me to make allegations of
this magnitude but I feel that individuals within the
Human Resource Department should know why a person who
has been committed over the years would make such a
claim. My leaving my position without making these
claims known is not the manner in which I choose to
leave this company that I hold in high regards.

(Id.)

The parties dispute if and when M&S decided to accept
Plaintiff's resignation. Chris Westcott, Vice President of
Operations at M&S, submitted a declaration claiming the company
decided to accept Plaintiff's resignation within two days of
receiving it—and prior to receiving Plaintiff's attempted
rescission and discrimination complaint. (Declaration of Chris
Westcott ("Westcott Decl.") Dkt. Ent. 52, ¶¶ 4, 7, 10.)
According to Westcott, M&S also began looking for a replacement
at that time. (Westcott Decl. ¶ 10.) After M&S received
Plaintiff's October 28 letter, the Leadership Team conferred and
decided not to permit the rescission for the same reasons it had
decided to accept Plaintiff's resignation and because it had
already begun the hiring process for Plaintiff's replacement.
(Ex. I to Marks. Decl. ("Hunter Dep.") at 46:23-
47:13.) Plaintiff argues that there is no evidence of this and
that he was never told that M&S planned to accept his
resignation.

On December 5, 2011, Plaintiff filed the present action
against M&S, alleging racial discrimination and retaliation

5

claims under § 1981, and hostile work environment under the
NJLAD. M&S now moves for summary judgment on all claims.

**II. LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A fact is "material" if it will "affect the
outcome of the suit under the governing law . . . ." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is
"genuine" if it could lead a "reasonable jury [to] return a
verdict for the nonmoving party." Id. When deciding the
existence of a genuine dispute of material fact, a court's role
is not to weigh the evidence; all reasonable "inferences,
doubts, and issues of credibility should be resolved against the
moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307
n.2 (3d Cir. 1983). However, a mere "scintilla of evidence,"
without more, will not give rise to a genuine dispute for trial.
Anderson, 477 U.S. at 252. Further, a court does not have to
adopt the version of facts asserted by the nonmoving party if
those facts are "utterly discredited by the record [so] that no
reasonable jury" could believe them. Scott v. Harris, 550 U.S.
373, 380 (2007). In the face of such evidence, summary judgment
is still appropriate "where the record . . . could not lead a
rational trier of fact to find for the nonmoving party . . . ."

6

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. <u>Orsatte v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995); <u>Jackson v. Danberg</u>, 594 F.3d 210, 227 (3d Cir. 2010) (citing <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

**III. DISCUSSION**

As an initial matter, Plaintiff states in his opposition papers, that he is no longer pursuing his NJLAD claim against

Defendant. (Plaintiff's Brief in Opposition ("Pl.'s Br.") Dkt. Ent. 58-2, at 6 n.1.) Additionally, Plaintiff appears to concede that he cannot establish a prima facie case of discrimination under § 1981 because he suffered no adverse employment action.[2] Accordingly, summary judgment shall be granted in favor of Defendant and these claims shall be dismissed. Thus, the only remaining claim to be evaluated is Plaintiff's retaliation claim under § 1981.

Section 1981 prohibits race discrimination in the making and enforcing of contracts. Despite the lack of a specific statutory provision prohibiting retaliation, the Supreme Court has held that retaliation claims are cognizable under CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008). The legal standards for a retaliation claim under § 1981 are the same as those applicable to a Title VII retaliation claim. See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001). To establish a prima facie case of employment retaliation a Plaintiff must show 1) he engaged in protected activity; 2) the employer took an adverse employment action against him; and 3) there was a causal

---

[2] See Pl.'s Br. at 9 ("Therefore, in this case, although Jones may not have suffered an adverse employment action for purposes of his race discrimination claim, Hammonds indicates that he has suffered an adverse employment action for purposes of his retaliation claim."). In the event the Court is mistaken and Plaintiff has not conceded that his § 1981 discrimination claim lacks merit, Plaintiff may seek this Court's reconsideration under Local Civil Rule 7.1(i).

connection between the protected activity and the adverse
employment action. Moore v. City of Phila., 461 F.3d 331, 340-41
(3d Cir. 2006). An employment action is considered adverse if it
"well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination." Burlington Northern &
Santa Fe Railway Co. v. White, 548 U.S. 53, 54 (2006) (internal
quotations omitted).

Under the McDonnell Douglas burden-shifting framework, once
Plaintiff has established a prima facie case of retaliation, the
burden shifts to the employer to articulate a legitimate
business reason for the adverse employment action. McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). The burden
then shifts back to Plaintiff to establish that these reasons
were pretextual. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.
1994).

M&S first contends that Plaintiff has failed to meet his
burden of establishing a prima facie case as Plaintiff cannot
demonstrate that he suffered an adverse employment action.
Specifically, M&S argues that its decision not to rescind
Plaintiff's voluntary resignation does not constitute an adverse
employment action. Second, M&S argues that, even if Plaintiff
did suffer an adverse employment action, summary judgment must
still be granted because Plaintiff has failed to demonstrate
that Defendant's purported nondiscriminatory reasons for

refusing to rescind Plaintiff's resignation were pretextual. The Court agrees.

With respect to Defendant's first argument – that there was no adverse employment action - it is undisputed that (1) on October 18, 2011, Plaintiff voluntarily resigned from his position as General Manager and (2) prior to his resignation, Defendant had in no way implied that Plaintiff should resign or otherwise forced him to do so. (DSUMF ¶¶ 9-11; PSUMF ¶¶ 9-11.) It is further undisputed that "Plaintiff intended to resign when he submitted the resignation letter" to M&S, and that M&S understood that letter to convey Plaintiff's intention to actually resign. (See DSUMF ¶¶ 11, 13-14; PSUMF ¶¶ 11, 13-14.) Plaintiff admits that his resignation does not mention or suggest a belief that he had been the subject of discrimination and the first time he appears to have indicated such a belief to M&S was in the October 28 letter requesting rescission of his resignation. (DSUMF ¶ 12; PSUMF ¶ 12; Exs. C & D to Compl.) Absent a showing of constructive discharge[3] – and here there is no claim of constructive discharge - an employee's resignation

_____

[3] "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." Hill v. Borough of Kutztown, 455 F.3d 225, 232 n.7 (3d Cir. 2006) (internal quotation and citations omitted). Plaintiff does not argue that he was constructively discharged, and the record does not support any such argument. See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).

is not an adverse employment action taken by the employer. See
Pa. State Pol. v. Suders, 542 U.S. 129, 141-42 (2004). In other
words, "[a]n employee who voluntarily resigns cannot show that
he or she has suffered an adverse employment decision at the
hands of the employer." Schofield v. Metropolitan Life Ins. Co.,
No. 03-0357, 2006 WL 2660704, at *8 (M.D. Pa. Sept. 15, 2006),
aff'd 252 F. App'x 500 (3d Cir. 2007).

Similarly, an employer's refusal to allow an employee to
rescind his resignation has been held not to be an adverse
employment action. Refusing to rescind a resignation, absent a
contractual or statutory duty to do so, is "not an adverse
employment action for the simple reason that the employment
relationship has ended." See Schofield, 2006 WL 2660704 at *9;
see also Hibbard v. Penn-Trafford Sch. Dist., No. 13-622, 2014
WL 640253, at *10 (W.D. Pa. Feb. 19, 2014) ("Because plaintiff's
resignation was voluntary and there was no constructive
discharge, the District's failure to accept her rescission of
her voluntary resignation was not an adverse employment action."
(citations omitted)); Cadet v. Deutsche Bank Sec., Inc., No. 11-
7964, 2013 WL 3090690, at *13 (S.D.N.Y. June 18, 2013)
(collecting cases). Moreover, to hold otherwise where, as here,
Plaintiff's protected activity (reporting alleged racial
discrimination) occurred simultaneous to his attempt to rescind
his resignation, would place the employer in an impossible

11

position. Again, absent a contractual or statutory duty to permit rescission, the employer would essentially be put into a box: either permit the rescission so as to avoid a later claim that the refusal was retaliatory or face the risk of a lawsuit.

Plaintiff relies on Hammonds v. Hyundai Motor Manufacturing Alabama, LLC, No. 10-103, 2011 WL 2580168 (M.D. Ala. June 28, 2011), to argue that this Court should disregard this case law in the context of a retaliation claim. In Hammonds, the plaintiff resigned approximately four months after filing a sexual harassment complaint but then sought to rescind her resignation just before her last day with Hyundai. Id. at 1. Hyundai refused to allow the plaintiff to rescind and she filed suit. Id. The Hammonds court examined the above-cited cases and determined that the refusal to allow the rescission of the resignation did not constitute an adverse employment action for purposes of a discrimination claim. Id. at *4. As to the retaliation claim, however, the Hammonds court noted the definition of an adverse employment established by the Supreme Court in Burlington Northern is broader than the definition used in discrimination claims. Id. at *5. In examining the retaliation claim presented, the District Court "[erred] on the side of caution under the more lenient Burlington standard and [assumed], without deciding," that Hyundai's refusal to allow the plaintiff to rescind her resignation could constitute an

adverse employment action. Id. at *5 n.9. The district court ultimately granted summary judgment on behalf of the employer on other grounds. Id. at 6. Here, however, the Court is not persuaded that M&S' refusal to permit Plaintiff to rescind his resignation would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." See Burlington Northern 548 U.S. at 68; Schofield, 2006 WL 2660704, at *8; Cadet, 2013 WL 3090690, at *13.

Moreover, even if the Court here was to assume that Defendant's action constitutes an adverse employment action, Plaintiff has failed to rebut the legitimate, nondiscriminatory reasons offered by M&S for why it did not allow Plaintiff to rescind his resignation. M&S has presented evidence of several nondiscriminatory reasons: (1) Plaintiff's erratic behavior as General Manager over the six months prior to his resignation; (2) Plaintiff's conflicts with Executive Chef Brendan Iacone; (3) Plaintiff's conflicts with other employees; (4) an incident in which Plaintiff met privately with three M&S employees regarding their employment status in violation of M&S practices; (5) Plaintiff's demotion of two Restaurant employees without seeking guidance from M&S regional management; and (6) the Leadership Team's overall view, based in part on Plaintiff's stated desire to resign, that it was best for both the Restaurant and Plaintiff for Plaintiff to move on because he

13

seemed to be disgruntled and unhappy as an M&S employee.
(Westcott Decl. at ¶ 9; see also Hunter Dep. at 46:23-47:13.)

In order to satisfy his burden to show pretext, Plaintiff
must present sufficient evidence so that a factfinder could
reasonably either "(1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." Fuentes, 32 F.3d
at 764.[4] Plaintiff has not done so here.

In response, Plaintiff makes several conclusory statements
that are not supported by concrete evidence in the record, even
in a light most favorable to Plaintiff. First, Plaintiff argues
that Iacone received a lesser degree of discipline after their
September 2011 dispute. (Pl.'s Br. at 10.) However, as stated
above, the language of their discipline regarding the incident
is virtually identical and Hunter explained that Plaintiff
received a "final warning" because of additional misconduct that
occurred subsequent to his interaction with Iacone. (Hunter Dep.
at 34:16-35:17, 39:20-40:24.)

---

[4] The Court notes that "[w]here the employer proffers a 'bagful'
of legitimate reasons, [] the employee may need only to 'cast
substantial doubt on a fair number of them.'" See Hood v.
Pfizer, Inc., 322 F. App'x 124, 127 n.1 (3d Cir. 2009)
(internal citations omitted)).

Second, Plaintiff contends that another manager, John Lank, was not disciplined even though he engaged in the same alleged misconduct that factored into Defendant's decision to refuse Plaintiff's request to rescind his resignation, i.e. meeting with employees in the absence of management or HR. However, Hunter testified that Lank was disciplined (Hunter Dep. 38:3-13, 106:6-15), and Plaintiff produced no evidence to dispute this claim. (See Pl.'s Dep. at 155:12-15.) Moreover, Plaintiff does not dispute that Hunter instructed him not to meet or discipline the employees without management involvement.

Plaintiff also points to a conversation in which Chris Westcott informed Plaintiff that M&S would not allow him to rescind his resignation. Plaintiff alleges that Westcott told him the "environment" between Plaintiff and M&S was too uncomfortable, which Plaintiff contends was because of his allegations of racial discrimination. (Pl.'s Br. at 10-11.) But in his own testimony Plaintiff admits he does not know what Westcott meant by "environment" and that Westcott never mentioned discrimination or Plaintiff's complaint at all. (Pl.'s Dep. at 234:16-236:3.) Thus, Plaintiff's arguments are speculative and do not sufficiently call into question the legitimate reasons offered by M&S.[5]

---

[5] Plaintiff also argues that the M&S' failure to notify Plaintiff that they had accepted his resignation until after he formally

Accordingly, Plaintiff has failed to offer evidence that Defendant's nondiscriminatory reasons for refusing to permit Plaintiff to rescind his resignation are "unworthy of credence," Fuentes, 32 F.3d at 765, and his mere speculation as to pretext is insufficient.

## VI. CONCLUSION

For the reasons outlined above, M&S' Motion for Summary Judgment will be GRANTED. An appropriate order will follow.


s/ Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE



Date: April 28, 2014

---

complained of discrimination suggests that Defendant's reasons are mere pretext. However, Westcott and Hunter declared that the Leadership Team, of which they are members, made the decision to accept Plaintiff's resignation within days of receiving it and were in the process of looking for Plaintiff's replacement. (Westcott Decl. ¶ 10; Marks Decl., Ex. I 44:12-21.) Without any evidence to suggest otherwise, the fact that they may not have immediately conveyed this to Plaintiff is irrelevant.